# IN THE SUPREME COURT OF THE STATE OF DELAWARE

EVERETT URQUHART, §
§ No. 287, 2015
Defendant Below, §
Appellant, § Court Below: Superior Court
§ of the State of Delaware
v. §
§ Cr. ID No. 1407012946
STATE OF DELAWARE, §
§
Plaintiff Below, §
Appellee. §

Submitted: February 24, 2016
Decided: February 26, 2016

Before **HOLLAND**, **VALIHURA**, and **SEITZ**, Justices.

## ORDER

This 26th day of February, 2016, it appears to the Court that:

(1) On July 15, 2014, Corporal Paul Demarco responded to an armed robbery at a corner store in Wilmington. He briefly checked on the store occupants and then walked up the street where he saw a woman. The woman told Corporal Demarco that she saw someone flee the area and described the getaway car and license plate. Subsequent investigation linked Everett Urquhart to the robbery. At trial, Urquhart objected to Corporal Demarco's account of the unknown woman's statement about the vehicle as hearsay and as a violation of his constitutional right to confront witnesses. The Superior Court overruled the objection. A jury convicted Urquhart of robbery and related crimes. Urquhart has now appealed,

challenging the Superior Court's evidentiary ruling. After a careful review of the record, we agree with the Superior Court that the unknown woman's statement qualified as an exception to the rule against hearsay and was not testimonial. Therefore we affirm the judgment of the Superior Court.

(2) On July 15, 2014, a masked man wearing a black North Face coat and ski mask walked into the Lesly Grocery, a corner store in Wilmington. He approached the cashier and pulled out a gun. The robber demanded that the cashier hand over the money in the register and fired the gun near him. A security camera documented the robbery. Another camera captured a dark-colored Chrysler 300 driving by the store seventy six seconds before the robbery.

(3) Wilmington Police Corporal Paul Demarco was on duty that day in the vicinity of the crime scene. A construction crew flagger approached Corporal Demarco and told him that someone was shooting inside the Lesly Grocery. After briefly checking on the welfare of the store occupants, Corporal Demarco walked up the street and encountered an unidentified woman. She appeared calm, but was whispering quietly as if she did not want to be seen speaking to police. The woman told Corporal Demarco that she saw someone flee the area and get into a green, four-door sedan. She also gave him its license plate number. Less than two minutes passed between the time Corporal Demarco radioed that he was responding to the call and the time he radioed the license plate number.

2

(4)     DMV records showed that Caree Matsen owned a green Chrysler 300 bearing the license plate number that the woman provided.  Matsen testified that she had loaned her car to her sister's boyfriend, Everett Urquhart.  Police searched Matsen's residence and found Urquhart's belongings in Matsen's sister's bedroom.  Police also found several pictures of Urquhart wearing a black North Face jacket with a hood.  Urquhart was arrested and charged with robbery.

(5)     At trial, the State sought to introduce through Corporal Demarco the unidentified woman's statement describing the vehicle and license plate.  The State argued that the statement was admissible as an excited utterance and as a present sense impression, exceptions to the rule against hearsay.  Urquhart objected, arguing that the exceptions did not apply, and also that the statement was testimonial and thus its admission would violate the Confrontation Clause of the United States Constitution.  The Superior Court overruled the objection and permitted Corporal Demarco's testimony.  The court reasoned that the woman's statement was not testimonial because the situation qualified as an emergency.  The court also found that under the circumstances, it could infer that the woman spoke to the officer immediately after the startling event while she was still under the stress of it, invoking the exceptions to the rule against hearsay.

(6)    After a three-day trial, a jury convicted Urquhart of robbery first degree,[1] possession of a firearm during the commission of a felony,[2] possession of a firearm by a person prohibited,[3] reckless endangering,[4] and wearing a disguise during the commission of a felony.[5] The Superior Court sentenced Urquhart to 15 years at Level V incarceration followed by decreasing levels of supervision. This appeal followed.

(7)    On appeal, Urquhart argues that the Superior Court erred by admitting the unidentified woman's hearsay statements about the car. He also contends that because the statement was testimonial, its admission violated his constitutional right to confront witnesses at trial. We review the Superior Court's decision to admit or exclude evidence based on hearsay for abuse of discretion.[6] "An abuse of discretion occurs when a court has exceeded the bounds of reason in view of the circumstances, or so ignored recognized rules of law or practice to produce injustice."[7] To the extent an evidentiary ruling implicates constitutional questions, our review is *de novo*.[8]

---

[1] 11 *Del. C.* § 832.
[2] 11 *Del. C.* § 1447.
[3] 11 *Del. C.* § 1448.
[4] 11 *Del. C.* § 604.
[5] 11 *Del. C.* § 1239.
[6] *Nalley v. State*, 935 A.2d 256 (Del. 2007) (Table).
[7] *Wright v. State*, 25 A.3d 747, 752 (Del. 2011) (quoting *Floudiotis v. State*, 726 A.2d 1196, 1202 (Del. 1999)).
[8] *Capano v. State*, 781 A.2d 556, 607 (Del. 2001).

(8)     Hearsay statements are generally inadmissible.[9]  But "present sense impression and excited utterance are both well recognized exceptions to the general evidentiary rule against hearsay."[10]  The present sense impression exception in Rule 803(1) permits the admission of a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."  Under Rule 803(1), the declarant must personally perceive the event and the statement must explain or describe the event.[11]  The statement does not have to be exactly contemporaneous with the event, but it must respond to it and occur a short time thereafter.[12]

(9)     For example, in *Wheeler v. State*,[13] a woman heard gun shots in her house and ran toward the sound.  In the kitchen, she witnessed her sister's boyfriend shoot her mother's boyfriend and run away.  Shortly after, she told her sister what she saw.  This Court determined that the woman's statement to her sister was a present sense impression because it was a "personal perception by an eyewitness describing the event and made immediately after the shooting."[14]

(10)     *Wheeler* is analogous to this case.  The unidentified woman witnessed the robbery and the ensuing getaway.  She saw a man get into a green car, noted

---

[9] D.R.E. 802.
[10] *Wheeler v. State*, 36 A.3d 310, 314 (Del. 2012); *see also* D.R.E. 803(1); D.R.E. 803(2).
[11] *Abner v. State*, 757 A.2d 1277 (Del. 2000) (Table).
[12] *Id*.
[13] 36 A.3d 310.
[14] *Id*. at 314.

the license plate number, and described that information to Corporal Demarco. It took less than two minutes from the time Corporal Demarco arrived at the scene, checked on the store occupants, spoke to the woman, and relayed the information over the radio. Given these facts, the Superior Court did not abuse its discretion or err as a matter of law when it ruled that the statement was a present sense impression and not hearsay.

(11) The statement was also admissible under the excited utterance exception of Rule 803(2). To qualify as an excited utterance, the proponent must show: "(1) the excitement of the declarant [was] precipitated by an event; (2) the statement being offered as evidence [was] made during the time period while the excitement of the event was continuing; and (3) the statement [was] related to the startling event."[15]

(12) This case is similar to *Nalley v. State*.[16] In *Nalley*, a bystander observed the defendant drive into a residential neighborhood at a high rate of speed. The defendant jumped from the vehicle while it was still moving and ran through the neighborhood. A short time later, police arrived on the scene. The bystander volunteered information regarding the defendant's clothing and his direction of travel. We held that the statement was an excited utterance because a

---

[15] *Gannon v. State*, 704 A.2d 272, 274 (Del. 1998).
[16] 935 A.2d 256 (Del. 2007) (Table).

person "hurriedly fleeing from a car in a neighborhood followed by police officers at night could reasonably prompt an excited utterance from local residents."[17]

(13) Like *Nalley*, the statement in this case qualified as an excited utterance. The unidentified woman who gave the statement saw the car speeding away from the robbery, and gave a description of the car and the license plate number. Her statement was precipitated by the robbery, and the statement was made almost contemporaneous with the robbery and related to the robbery. Although the record does not directly confirm the excited state of the declarant, we can reasonably infer that she was excited, given the circumstances. The woman had peered into the grocery store during the commotion, so she likely heard the gunshot and knew a robbery just occurred. Even though the witness appeared calm and spoke quietly, she was likely attempting to avoid being seen assisting the police. Under these circumstances, it was not error for the Superior Court to find that she was "excited" at the time of the event.[18] Therefore, all of the elements of the test for an excited utterance were satisfied, and the Superior Court did not abuse its discretion by admitting the statement into evidence.

(14) Finally, Urquhart argues that the admission of the unidentified woman's statement violated his Sixth Amendment right to confront witnesses against him because the statement was testimonial. He argues if he had been able

---

[17] *Id.* at *4.
[18] *See Wright*, 25 A.3d at 752.

to cross examine the woman, he could have exposed a reasonable doubt as to the accuracy of her statement. In *Crawford v. Washington*[19] the United States Supreme Court held that the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."[20] A statement is testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."[21]

(15) At the time Corporal Demarco asked the woman if she had seen anyone run by, he was attempting to control a situation where an armed robbery had just occurred and a man who fired a gun at a store cashier was fleeing the scene. The witness answered the officer voluntarily and did so to assist him in an ongoing emergency "rather than simply to learn what happened in the past."[22] Therefore, the Superior Court correctly held that the statement was not testimonial and therefore did not implicate the Confrontation Clause.

---

[19] 541 U.S. 36 (2004).

[20] *Id*. at 53-54; *see also Jones v. State*, 940 A.2d 1, 11 (Del. 2007).

[21] *Davis v. Washington*, 547 U.S. 813, 822 (2006); *see also Jones*, 940 A.2d at 11.

[22] *Davis*, 547 U.S. at 822; *see also Nalley*, 935 A.2d 256 (bystander's unsolicited statements to police were not testimonial because the primary purpose was to assist the police with an ongoing emergency).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice